IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RICHARD SHEPARD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:13cv499-WKW |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on a *pro se* motion by Richard Shepard ("Shepard") to

vacate, set aside, or correct sentence under 28 U.S.C. § 2255.  Doc. No. 1.[1]

## I.  BACKGROUND

On February 11, 2011, a jury found Shepard guilty of possession with intent to

distribute crack cocaine and powder cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count

6 of the indictment), and possession of a firearm in furtherance of a drug trafficking crime,

in violation of 18 U.S.C. § 924(c)(1)(A) (Count 8).  After a sentencing hearing on May 18,

2011, the district court sentenced Shepard to 180 months in prison, comprising 120 months

for the distribution count and a consecutive term of 60 months for the firearm count.[2]

---

[1] Unless otherwise indicated, references to document numbers ("Doc. No.") are to those assigned by the Clerk of Court to pleadings docketed in this action.  References to exhibits ("Resp't Ex.") are to those filed by the Government with its Response, Doc. No. 8.  Page references are to those assigned by CM/ECF.

[2] On August 21, 2014, the district court resentenced Shepard to 78 months in prison for the distribution count, to be followed by 60 months for the firearm count, for a total term of
(continued...)

Shepard appealed, arguing that the district court abused its discretion by denying his motion for a mistrial following the prosecutor's remark during closing argument that Shepard had a thousand dollars but no job. *See United States v. Shepard*, 485 Fed. App'x 986 (11th Cir. 2012). The Eleventh Circuit found no abuse of discretion in the district court's denial of Shepard's motion for a mistrial and affirmed Shepard's conviction and sentence. *Id*. at 987-88.

On July 11, 2013, Shepard filed this § 2255 motion, asserting that:

1.      Trial counsel rendered ineffective assistance by–

    (a)      failing to raise adequate arguments in his motion for judgment of acquittal challenging the sufficiency of the evidence regarding his possession of the drugs and firearm found in the northwest bedroom of the searched residence;

    (b)      failing to challenge the sufficiency of the evidence that he possessed the firearm in furtherance of a drug trafficking crime, in

---

²(...continued)

imprisonment of 138 months. *See* Case No. 2:06cr17-WKW, Doc. Nos. 276 & 277. The resentencing took place in light of the Supreme Court's decision in *Dorsey v. United States*, __ U.S. __, 132 S.Ct. 2321 (2012). In *Dorsey*, the Court held that the Fair Sentencing Act ("FSA"), Pub.L. 111-220, 124, Stat. 2372 (codified at 21 U.S.C. § 841 (2010), which amended the sentencing provisions in 21 U.S.C. § 841(b)(1) by increasing the amounts of crack cocaine necessary to trigger the mandatory minimum sentences for offenses under § 841(a)(1), applies to defendants who committed crack cocaine offenses before August 3, 2010 (the date of the statute's enactment), but who were not sentenced until after August 3, 2010. Shepard committed his offense in 2006, but was not sentenced until 2011. Consequently, the district court found that he was entitled to the benefit of the FSA, under which a lower statutory mandatory minimum of five years (previously ten years) applies. *See* Case No. 2:06cr17-WKW, Doc. No. 264. The 78-month sentence imposed for the distribution count at resentencing was at the low end of Shepard's guidelines range of 78-97 months.

violation of 18 U.S.C. § 924(c)(1)(A);

    (c)    failing to file a motion to suppress the seized evidence; and

    (d)    failing to object to the Government's use of perjured testimony before the grand jury and at trial.

2.    Appellate counsel rendered ineffective assistance by failing to properly review the trial record and prepare an adequate appeal.

Doc. No. 1; Doc. No. 2 at 3-34.

The Government argues that Shepard's claims of ineffective assistance of counsel lack merit and therefore entitle him to no relief. Doc. No. 8. After due consideration of the parties' submissions, the record, and the applicable law, the court concludes that Shepard's § 2255 motion should be denied without an evidentiary hearing. Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*,

## II. DISCUSSION

### A. General Standard of Review

Collateral review is not a substitute for direct appeal; therefore, the grounds for collateral attack on final judgments of conviction are limited. A federal prisoner is entitled to relief under 28 U.S.C. § 2255 only if the district court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum sentence authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States*

*v. Shepard*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).   "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."   *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice").   The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent."

## B.   Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is governed by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).   *Grossman v. McDonough*, 466 F.3d 1325, 1344 (11th Cir. 2006). Under *Strickland*'s two-part test, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

4

proceeding would have been different." *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (internal quotation marks omitted); *see Strickland*, 466 U.S. at 687-88 & 694.

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler v. United States*, 218 F.3d 1305, 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id.* (internal quotation marks and brackets omitted). Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id.*

As noted above, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive

the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

The Supreme Court has held that a criminal defendant's appellate counsel is not required to raise all nonfrivolous issues on appeal. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). In so holding, the Court noted, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id*. at 751-52. Therefore, it is difficult for a defendant to show his counsel was ineffective for failing to raise certain issues on appeal, particularly if counsel did present other strong issues. *Smith v. Robbins*,

528 U.S. 259, 287-88 (2000).

### 1.    *Failure to Challenge Sufficiency of Evidence of Possession of Drugs and Firearm Adequately in Motion for Judgment of Acquittal*

Shepard claims that his trial counsel rendered ineffective assistance by failing to raise adequate arguments in his motion for judgment of acquittal challenging the sufficiency of the evidence regarding his possession of the drugs and firearm found in the northwest bedroom of the searched residence.  Doc. No. 2 at 3-9.

Evidence adduced at trial showed that on March 23, 2006, officers with the Montgomery Police Department ("MPD") used a confidential source to buy a large quantity of cocaine base from Thomas Grove, Shepard's codefendant.  Resp't Ex. C at 55-57.  The purchase was made at a three-bedroom residence owned by Grove, at which Shepard resided with Grove and another individual, Malcolm Echols, under a lease from Grove.  *Id*. at 50, 53-54, 59-61, 67-68.

That same date, a search warrant for the residence was obtained and executed by MPD officers and DEA agents.  Resp't Ex. C at 37.  In the northwest bedroom of the residence, officers found approximately 110 grams of crack cocaine, 15.9 grams of cocaine powder, and $1180 in currency, all in the pockets of a jacket hanging in a closet.  *Id*. at 38-39, 76-78, 93, 113.  Also found in the closet were a box for a Ruger 9mm pistol and a photo album containing photographs of Shepard and his girlfriend.  *Id*. at 39-40.  Shepard was also depicted in photographs that agents found on top of a dresser in the bedroom.  *Id*. at 46.  In

the same bedroom, agents found a loaded Ruger 9mm pistol on the dresser (approximately ten feet from the cocaine) and receipts for the pistol and ammunition. *Id*. at 40-46, 107, 114. The receipts were in Shepard's name and showed a purchase date of December 27, 2005. *Id*. at 42-44.

Shepard was present at the residence when the search warrant was executed. The officers who participated in the search concluded that Shepard was the occupant of the northwest bedroom[3] because the receipts for the gun and ammunition found there showed that he was the purchaser, and the photographs in the bedroom depicted Shepard. *Id*. at 49-50, 63, 68-70, 126-27, 131-32.

Assorted digital scales of the type used by drug dealers in weighing and packaging drugs for sale were found in the kitchen during the search of the residence. *Id*. at 38, 73-77. The Government presented testimony indicating that the quantity of cocaine found in the northwest bedroom was a "distribution amount" and that it was common for drug dealers to keep weapons to protect their drugs and proceeds from their drug dealing. *Id*. at 87-93, 131-33. The drugs and pistol found in the northwest bedroom were the bases of Shepard's convictions.[4]

---

[3] The terms "occupant" and "occupied" as used in this Recommendation refer to an individual's habitation of a particular bedroom in the residence as the individual's personal living space.

[4] Officers determined that the southwest bedroom of the residence was occupied by Thomas Groves. Resp't Ex. C at 68, 129-30, 133. Testimony indicated that no items identifiably linked to Groves or the third occupant of the residence, Malcolm Echols (who occupied the
(continued...)

At the close of the Government's case, Shepard's counsel moved for a judgment of acquittal as to all counts based on insufficient evidence. Resp't Ex. C at 140-41. Counsel renewed the motion for judgment of acquittal immediately before closing arguments. *Id*. at 145-46. The district court denied the motions.

 "Possession may be either actual or constructive." *United States v. Sweeting*, 933 F.2d 962, 965 (11th Cir. 1991). The constructive possession of drugs and firearms may be established by proving "ownership, dominion, or control over" the premises where the drugs and firearms were located. *United States v. Poole*, 878 F.2d 1389, 1391-92 (11th Cir. 1989); *see also, e.g., Thompson v. United States*, 2011 WL 553794, at *4-6 (N.D. Ga. Feb. 3, 2011).

Here, ample circumstantial evidence demonstrated Shepard's constructive possession of the drugs and gun found in the northwest bedroom of the residence. The conclusion that the bedroom was Shepard's and that he exercised "ownership, dominion, or control" over the drugs and gun is supported by the gun and ammunition receipts in his name, the photographs of Shepard found in the bedroom, and the fact that the drugs were located in the pockets of a jacket hanging in a closet in the bedroom.

Although Shepard contends that his counsel should have "challenged" the Government's evidence that he occupied the northwest bedroom, he fails to identify a plausible argument that counsel should have presented in this regard. Instead, he asserts that the ample circumstantial evidence connecting him to the northwest bedroom – and to the

---

[4](...continued)
southeast bedroom), were found in the northwest bedroom. *Id*. at 129-31.

drugs and gun found there – lacked probative value.[5]  Shepard fails to identify an argument or point to facts that, if presented in a motion for judgment of acquittal, were reasonably likely to prevail and change the result of the proceeding. Consequently, he fails to demonstrate deficient performance by his counsel or any resulting prejudice. *See Strickland*, 466 U.S. at 687-88 & 694.  He is entitled to no relief based on this claim of ineffective assistance of counsel.

### 2.    *Failure to Challenge Sufficiency of Evidence of Possession of Firearm in Furtherance of Drug Trafficking Crime*

Shepard claims that his trial counsel was ineffective for failing to challenge the sufficiency of the evidence that he possessed the firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).  Doc. No. 2 at 9-15.

There are two ways to violate 18 U.S.C. § 924(c): either by (1) using or carrying a firearm during and in relation to a drug trafficking crime or (2) possessing a firearm in furtherance of a drug trafficking crime. *See United States v. Timmons*, 283 F.3d 1246, 1250-53 (11th Cir. 2002); *United States v. Daniel*, 173 Fed. App'x 766, 770 (11th Cir. 2006). Shepard was convicted under the "possession in furtherance of" prong of § 924(c). To establish that a firearm was possessed "in furtherance" of a drug trafficking crime, the government must show "'some nexus between the firearm and the drug selling operation.'"

---

[5] Shepard's method of argument here and throughout his motion is to claim, without offering a shred of proof, that all the Government's witnesses, including the investigating law enforcement officers, testified falsely against him; that the prosecutor was out to get him, trumped up charges against him, and lied to obtain his conviction; and that his attorneys were incompetent and "worked for the prosecution."

*United States v. Timmons*, 283 F.3d 1246, 1253 (11th Cir. 2002) (quoting *United States v. Finley*, 245 F.3d 199, 203 (2nd Cir. 2001)). "The nexus between the gun and the drug operation can be established by '... accessibility of the firearm,... proximity to the drugs or drug profits, and the time and circumstances under which the gun is found.'" *Id*. (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000)).

Here, the Government presented evidence that a "distribution amount" of cocaine was found in a jacket in the closet of Shepard's bedroom. A large amount of cash was also found in the jacket. Digital scales were found in the residence's kitchen. Located near (approximately ten feet from) the drugs in Shepard's bedroom was a loaded Ruger 9mm pistol. Beside being found in Shepard's bedroom, the gun was further linked to Shepard by receipts showing his purchase of the gun and ammunition for the gun. Testimony indicated that it is common for drug dealers to keep weapons to protect their drugs and proceeds from their drug dealing.

Here, the various indicators of drug dealing ("distribution amounts" of cocaine, a large amount of cash, digital scales, a loaded gun) and the proximity of the gun to the drugs established a nexus sufficient to prove a violation of § 924(c)(1)(A) for possessing a firearm in furtherance of a drug trafficking crime. As previously noted, Shepard's counsel moved for a judgment of acquittal on all counts based on insufficient evidence. *See* Resp't Ex. C at 140-41, 145-46. Shepard fails to demonstrate deficient performance by counsel or resulting prejudice. He is entitled to no relief based on this claim.

### 3.     *Failure to File Motion to Suppress*

Shepard claims that his trial counsel was ineffective for failing to file a motion to suppress the seized evidence.  Doc. No. 2 at 16-21.  He seems to suggest that the search of the residence involved an unlawful warrantless search conducted without probable cause. *Id*. at 16-19.

> Addressing this claim, Shepard's trial counsel avers:
>
> As to the failure to file a Motion to Suppress, I say as follows.  It is true that I did not file a motion to suppress.  It is my practice not to file motions just for the sake of filing them.  Unless there is a sufficient basis in the facts and law upon which to file a credible motion, I choose not to file it.  In this case there were search warrants obtained, so we had no warrantless search issues, after extensive police investigation which included controlled buys and similar tactics.  There was simply no legitimate basis to try to suppress the evidence. Our strategy was not to deny the existence of the drugs but to deny knowledge and possession of the drugs. Mr. Shepard supported this strategy at that time.

Doc. No. 7 at 3.

Shepard establishes no basis upon which a motion to suppress evidence would have succeeded.  When a petitioner claims that his counsel was ineffective for failing to move to suppress evidence, he must establish that he was prejudiced by that failure.  *See DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000).  Shepard fails to demonstrate that his counsel's performance here was professionally unreasonable or prejudicial.  Consequently, he is not entitled to relief based on this claim.

### 4.     *Failure to Object to Perjured Testimony*

Shepard contends that his trial counsel was ineffective for failing to object to the

Government's use of perjured testimony before the grand jury and at trial.  Doc. No. 2 at 21-29.

Shepard offers two specific instances of allegedly perjured testimony by Government witnesses.  He maintains that at his first trial, in November 2010, which ended in a mistrial, MPD Officer Paul Hayes testified that no utility bills in Shepard's name were found during a search of the residence conducted in June 2005, approximately eight months before the March 2006 search of the same residence that resulted in Shepard's arrest.  Doc. No. 2 at 25.  At Shepard's retrial in February 2011, Officer Hayes testified that monthly Alagasco, Knology, and Terminix bills in Shepard's name were found in the June 2005 search of the residence.  *See* Resp't Ex. C at 27-35.  Citing this discrepancy in Officer Hayes' testimony at the two trials, Shepard maintains that the officer's testimony at the later trial – that gas, cable, and pest-control bills in his name were found in the June 2005 search – constituted perjury.

First, a review Officer Hayes's testimony in the November 2010 trial reveals that he did not unequivocally state that no utility bills in Shepard's name were found in the June 2005 search.  This exchange occurred during cross-examination of Officer Hayes at that trial:

> [SHEPARD'S COUNSEL]:  The house at [...], y'all did some things looking at – first of all, let me talk about utility bills.  You introduced a water bill yesterday.  You don't have any utility bills in the name of Richard Shepard for the house at [...], do you?
>
> (Brief pause)
>
> I'll represent to you in discovery I haven't received any such

documents, so I don't believe it exists.  Is that –

[OFFICER HAYES]:  Not that I can remember right off.  There were several utility bills, some in Thomas Grove and some in others.  Not that I recall right away no.

Case No. 2:06cr17-WKW, Doc. No. 107 at 24.

Thus, Officer Hayes testified in November 2010 that he could not "recall right away" that any utility bills in Shepard's name were found in the June 2005 search.  However, he stated that he believed some utility bills in the names of people other than Thomas Grove were found in the search, leaving open the possibility that some were in Shepard's name.

Perjury is making a false statement "with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Williams*, 340 F.3d 1231, 1241 n.10 (11th Cir. 2003) (citation and quotation omitted).  To obtain a reversal on the grounds that the Government relied on perjured testimony, a criminal defendant must show that the statements at issue were (1) actually false, (2) material, and (3) known to be false by the Government.  *United States v. Bailey*, 123 F.3d 1381, 1395 (11th Cir. 1997).

Shepard falls far short of demonstrating that Officer Hayes's testimony at the later trial regarding the recovery of utility bills in his name was actually false, much less that it was known to be false by the Government. Further, Shepard makes no showing of materiality. Other Government witnesses beside Officer Hayes testified at Shepard's February 2011 retrial that Alagasco, Knology, and Terminix bills in Shepard's name were

found in the June 2005 search (*see, e.g.*, Resp't Ex C. at 128, testimony of MPD Officer Scotty Edwards), and the Government introduced those bills into evidence as exhibits at the February 2011 trial (*id.* at 33). Shepard does not seriously challenge the authenticity of those exhibits. Whether Shepard's name was on certain utility bills for the residence was only one of many evidentiary facts tending to show that Shepard lived in the residence, along with Thomas Grove and Malcolm Echols. The Government presented testimony indicating that Shepard acknowledged to an officer searching the residence in June 2005 that he lived there. Resp't Ex. C at 84-87. Further, Shepard was present at the residence during both the June 2005 and March 2006 searches. As noted above, during the March 2006 search, photographs of Shepard were found in the northwest bedroom of the residence, as were receipts in his name, including a receipt for the pistol found in the same bedroom. Finally, evidence was introduced that Shepard's name appeared on a lease for the residence as a lessee from Grove.[6] *See id.* at 52. Thus, under the circumstances, Shepard presents no basis on which to suppose any likelihood that Officer Hayes's February 2011 testimony regarding utility bills found in the June 2005 search substantially affected the jury's verdict. Because Shepard's perjured testimony argument fails, so too does his corresponding ineffective assistance claim.

---

[6] The Government's inadvertent failure to provide Shepard's counsel with a copy of the lease during discovery was at the root of the mistrial ordered in Shepard's November 2010 trial. Shepard was tried jointly with Grove at the first trial. The district court agreed with the attorneys for Shepard and Grove that the lease showing Shepard as a lessee from Grove created a conflict in their defenses when each defendant was denying possession of the drugs and drug paraphernalia found in the searches of the residence. On that basis, the court granted a mistrial and the defense's motion to sever. Shepard and Grove were retried separately.

Next, Shepard maintains that MPD Officer Scotty Edwards testified falsely before the grand jury that he negotiated a controlled buy of cocaine from Shepard in June 2005 before the first search of the residence, when Officer Edwards actually negotiated that controlled buy with Thomas Grove and he (Shepard) was not involved in the transaction. Doc. No. 2 at 23-24. However, a review of the grand jury transcript reveals that Officer Edwards's reference to Shepard as a participant in the controlled buy was merely a verbal slip and that the overall import of the officer's grand jury testimony established that the controlled buy was negotiated with Grove and that Shepard was not a participant.

The grand jury transcript shows that Officer Edwards testified that, using a confidential source as the potential buyer, he set up a controlled buy from Grove in June 2005, but he then inadvertently began to refer to Grove in his testimony as "Mr. Shepard" and to explain his efforts to get the confidential source to persuade "Mr. Shepard" to meet him with the drugs at another location. Doc. No. 12-12 at 2-4. After several references to "Mr. Shepard," however, Officer Edwards returned to referring to Grove in his testimony as the person with whom the buy was negotiated and the person who was to meet the confidential source at another location with the drugs. *Id*. at 4. Officer Edwards then described observing Grove leave the residence to meet the confidential source and the MPD's subsequent stop of Grove in his vehicle, where the cocaine Grove intended to sell to the confidential source was found. *Id*. at 4-5.

It is evident that Officer Edward's references to "Mr. Shepard" in his grand jury

testimony about the June 2005 controlled buy constituted mistakes and were not willfully false statements. Shepard falls fall short, moreover, of demonstrating that Officer Edwards's inadvertent references to "Mr. Shepard" substantially influenced the grand jury's decision to issue the charges for which he was convicted or that there is grave doubt that the grand jury decision was free from the influence of the misstatements, given the other evidence. *See United States v. Akel*, 337 Fed. App'x 843, 858-59 (11th Cir. 2009). The grand jury transcript reflects that Officer Edwards also testified regarding the March 2006 search of the residence and the discovery of the drugs and gun in the bedroom believed to be Shepard's. *See* Doc. No. 12-12 at 7-10. Shepard's two counts of conviction – under Counts 6 and 8 of the indictment – were based on evidence arising from the March 2006 search. Shepard was not tried for or convicted of actions relating to the June 2005 controlled buy.[7] Again, Shepard's perjured testimony argument fails; consequently, so does his corresponding ineffective assistance claim.

### 5. *Failure to Properly Review Trial Record and Prepare Adequate Appeal*

Shepard claims that his appellate counsel rendered ineffective assistance by failing to review the trial record properly and prepare an adequate appeal. Doc. No. 2 at 29-34. He faults appellate counsel for presenting only a single issue to the Eleventh Circuit, i.e., that the district court abused its discretion by denying his motion for a mistrial following the

---

[7] Count 2 of the indictment charged Shepard with intent to distribute cocaine based on drugs that were found in a common area of the residence (the kitchen) during the June 2005 search. The jury acquitted Shepard on that count.

prosecutor's remark during closing argument that Shepard had a thousand dollars but no job. *See United States v. Shepard*, 485 Fed. App'x 986 (11th Cir. 2012). He suggests that additional investigation by appellate counsel into the discovery materials in his case would have revealed facts to support an argument that the drugs found in the northwest bedroom of the residence were planted there by someone besides him. Doc. No. 2 at 30. In addition, he asserts that further investigation by counsel would have revealed that his right to testify was violated. *Id*. at 32-33. He also reargues the issue that appellate counsel presented to the Eleventh Circuit regarding the prosecutor's remark during closing argument that Shepard had no job. He maintains that counsel should have presented the appellate court with evidence that he was employed and had alternative sources of money. *Id*. at 31.

Addressing Shepard's claims, his appellate counsel avers:

1. I was appointed to represent the Petitioner, Richard Shepard on the direct appeal. I filed all required documents. I received the record in the appeal of his case. I reviewed said record for issues I felt were properly preserved and supported by the record. I am limited in arguing those issues preserved in the record on appeal. I presented an issue on appeal regarding the improper comments made by the prosecutor.

2. Mr. Shepard argues ineffective assistance of appellate counsel by stating I did "no investigation." Mr. Shepard argues I should have looked into the discovery and performed a background check on whether he had a job or not. Undersigned appellate counsel reviewed the record. Neither of the issues for which Mr. Shepard complains were properly preserved issues in the record on appeal. Reviewing the discovery and performing background checks goes beyond the scope of what counsel was appointed to do on behalf of Mr. Shepard with the direct appeal. I am limited to reviewing the record for properly preserved issues. I did so.

3. Mr. Shepard argues I could have made a better argument on his right

18

to remain silent. He argues that he wanted to testify at trial. I was not trial counsel. I do not recall that this issue was supported by the record on appeal. This is the first time I have heard that Mr. Shepard wanted me to consider this issue on appeal.

I sent multiple letters to Mr. Shepard to discuss the issues to be considered and the one issue presented on his behalf. In these letters, I explained that I could only present issues properly preserved at the trial court level. I discussed the 10 issues he asked me to consider and why I felt the only proper issue was the one presented. The issue regarding his desire to testify was not included in the issues he asked me to consider on appeal. I do not recall this issue as being properly preserved to raise on appeal. I do not feel there is merit to this issue.

Doc. No. 4 at 1-2.

As noted by Shepard's appellate counsel, the issues Shepard now says he wanted his appellate counsel to raise were not preserved for appellate review. Shepard's theory that inferences could be drawn from discovery materials that the drugs found in the northwest bedroom were "planted" there would, at most, go to the weight of the evidence and was not an issue that could be raised for the first time on appeal. Nor is such a theory supported by the record.

Likewise, evidence of Shepard's employment status was not something that could be presented for the first time on appeal. Moreover, the Eleventh Circuit's disposition of the improper-prosecutorial-remark claim indicates that the presentation of such evidence would not have affected the appellate court's finding of no abuse of discretion in the district court's denial of trial counsel's motion for a mistrial. The appellate court found that "it was, at the very least, reasonable for the jury to conclude that money [i.e., $1180 in cash found in a

19

pocket of a jacket] was related to drugs" and that "Shepard failed to rebut the presumption that the jury followed the court's instruction to disregard to prosecutor's comment." *United States v. Shepard*, 485 Fed. App'x 986, 987 (11th Cir. 2012).  Both the district court and appellate court presumed that no evidence regarding Shepard's employment status was presented at trial, and neither the district court's denial of the motion for a mistrial nor the appellate court's finding that the district court did not abuse its discretion regarded Shepard's actual employment status.

Last, Shepard's denial-of-right-to-testify claim was not preserved for appellate review and would not have been apparent to appellate counsel from the record.  Appellate counsel notes that Shepard never indicated to her that he wanted her to raise the issue on appeal. Notably, in his § 2255 motion, Shepard does not assert a separate claim alleging ineffective assistance of trial counsel for depriving him of his right to testify.  Finally, Shepard's cursory allegations in this regard do not demonstrate prejudice by showing a reasonable possibility that the results of the proceeding would have been different had he testified.  *See Fishbone v. Sec'y for Dep't. of Corrs.*, 165 Fed. App'x. 800, 801-02 (11th Cir. 2006) (defendant not prejudiced by trial counsel's alleged ineffective assistance in failing to inform him he had the right to testify when, even in light of defendant's proposed testimony, there was no reasonable possibility that result of proceedings would have differed if defendant had testified).

Shepard has not established deficient performance by his appellate counsel or that he

was prejudiced by appellate counsel's alleged failures.  Consequently, he is entitled to no relief on his claim of ineffective assistance of appellate counsel.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Shepard be DENIED with prejudice, as the claims therein entitle him to no relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation **[on or before September 15, 2015.** A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE, this 1st day of September, 2015.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE